IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DONALD B. INGRAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 3:12-cv-01106 |
| v. ) | Judge Nixon |
| ) | Magistrate Judge Griffin |
| STATE OF TENNESSEE DEPARTMENT OF ) | |
| LABOR AND WORKFORCE ) | JURY DEMAND |
| DEVELOPMENT and KARLA DAVIS, ) | |
| Individually and in her capacity as ) | |
| Commissioner of the State of Tennessee ) | |
| Department of Labor and Workforce ) | |
| Development, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Pending before the Court is a Motion to Dismiss ("Motion") (Doc. No. 6), filed by Defendants State of Tennessee Department of Labor and Workforce Development ("Department") and Department commissioner Karla Davis. For the reasons below, the Court **GRANTS** the Motion in part and **DENIES** the Motion in part.

**I.   BACKGROUND**

Plaintiff Donald B. Ingram worked for the Department on and off for approximately twenty-seven years—most recently as the administrator of the Division of Employment Security—until Defendant Davis, the Department commissioner, terminated his employment on June 4, 2012. (Doc. No. 11 ¶¶ 6, 8, 24.)

Under Tennessee law, the commissioner appoints an administrator of the Division of Employment Security for a four-year term and "has the authority to remove an administrator only for non-performance of duties and responsibilities." Tenn. Code Ann. § 4-3-1408(b)(3)

1

(2012); (Doc. No. 11 ¶¶ 9–10.) This statutory provision came as part of the Tennessee Workforce Development Act of 1999, when the state legislature consolidated several state departments and agencies into the Department. (Doc. No. 11 ¶ 9); Tenn. Code Ann. § 4-3-1401 (2013).

In 2004, then-commissioner James Neely appointed Ingram to the position of administrator for the Division of Employment Security and reappointed him in 2007. (Doc. No. ¶¶ 11–12.) In 2011, Davis became the Department commissioner and reappointed Ingram to a third term set to expire on June 30, 2015. (*Id.* ¶ 13.)

In his capacity as administrator, Ingram oversaw the distribution of billions of dollars of unemployment benefits to Tennessee residents during a time of economic recession. (*Id.* ¶ 14.) However, he alleges that Davis and others working at her direction "conducted a campaign to force Plaintiff out of his statutory office as Administrator" that included, among other actions, interfering with the exercise of his authority, instructing employees not to obey his directives, and, ultimately, wrongfully terminating him and replacing him with an unqualified employee. (*Id.* ¶¶ 6, 23.) Ingram alleges these actions took place within the context of Davis's "campaign to drive out qualified Caucasian employees from the Department of Labor in order to replace them with persons of minority descent." (*Id.* ¶ 22.) Ingram is Caucasian; Davis and her two subordinates named in the suit are African-American. (*Id.* ¶ 21.)

On September 21, 2012, Ingram filed suit against Defendants in the Chancery Court of Davidson County, Tennessee, claiming violations of (1) Tenn. Code Ann. § 4-3-1408(b)(3); (2) the Tennessee Human Rights Act; and (3) the equal protection clause of the Fourteenth Amendment under 42 U.S.C. § 1983. (Doc. No. 1-1.) Defendants removed the suit to federal court the following month. (Doc. No. 1.)

2

On November 9, 2012, Defendants filed their Motion to Dismiss (Doc. No. 6), along with a Memorandum in Support (Doc. No. 7). On November 30, 2012, Ingram filed an Amended Complaint (Doc. No. 11) and a Response to the Motion (Doc. No. 12). Rather than require Defendants to file a new motion to dismiss, the parties in December 2012 agreed to proceed with the pending Motion (Doc. No. 15 ¶ 1), and Defendants filed a Reply (Doc. No. 16) on January 8, 2013.

## II.   LEGAL STANDARD

To withstand a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Supreme Court has clarified the *Twombly* standard, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Plausibility requires "[m]ore than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "merely consistent with defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (quotation marks and citation omitted).

When ruling on a defendant's motion to dismiss, the Court must "[c]onstrue the complaint liberally in the Plaintiffs' favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir. 1994) (citation omitted). The Court must allow "a well-pleaded complaint [to] proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly,* 550 U.S. at 556.

**III. ANALYSIS**

In their Motion, Defendants raise multiple arguments for why each of Ingram's three sets of claims should be dismissed. The Court addresses each in turn.

*A. Tennessee Workforce Development Act Claims*

1. <u>State Sovereign Immunity</u>

Defendants first argue that the Court should dismiss Ingram's claims under Tenn. Code Ann. § 4-3-1408(b)(3), part of the Tennessee Workforce Development Act of 1999 ("TWDA"), because the state enjoys sovereign immunity from such claims seeking monetary relief. (Doc. No. 7 at 4–7.)

The doctrine of sovereign immunity is enshrined in the Tennessee Constitution, which provides that "Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct." Tenn. Const. art. I, § 17. "The traditional construction of the clause is that suits cannot be brought against the State unless explicitly authorized by statute." *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 849 (Tenn. 2008).

This immunity applies to suits against state agencies and officers in their official capacities. *Id.* The Tennessee Code explicitly prohibits "any suit against the state, or against any officer of the state acting by authority of the state, with a view to reach the state, its treasury, funds or property." Tenn. Code Ann. § 20-13-102(a) (2013). Absent legislation providing otherwise, Tennessee courts have interpreted this statutory provision to hold that the state remains immune from wrongful discharge claims for reinstatement and monetary damages. *See Cashion v. Robertson*, 955 S.W.2d 60, 63 (Tenn. Ct. App. 1997) (holding no state "statute permitt[ed] discharged state employees to file suit against the state for monetary damages"); *Stokes v. Univ. of Tenn. at Martin*, 737 S.W.2d 545, 546 (Tenn. Ct. App. 1987) ("Clearly

plaintiff's suit seeking reinstatement, back-pay, employment benefits, and attorney's fees, comes within the purview of the statute.").

Here, Ingram seeks at least $500,000 in monetary damages and reinstatement against the Department and Davis, acting in both her official and individual capacities. (Doc. No. 11 at 13.) Because Ingram has not identified any applicable statute that waives immunity in this context to allow monetary relief against the state directly—and the Court has not found such a statute—the Court finds that sovereign immunity prevents this claim from advancing against the Department and Davis in her official capacity.

Ingram attempts to circumvent the sovereign immunity bar by highlighting two state supreme court rulings—*Colonial Pipeline*, 263 S.W.3d 827, and *Stockton v. Morris & Pierce*, 110 S.W.2d 480 (Tenn. 1937)—for the proposition that sovereign immunity does not apply here because Davis acted *ultra vires*. (Doc. No. 12 at 15–16.) However, Ingram takes these *ultra vires* holdings out of context, and both cases are distinguishable. In *Stockton*, the court held sovereign immunity did not apply for two reasons to a suit seeking to recover products seized by the state: First, a replevin action to retrieve a plaintiff's unlawfully seized goods does not "reach" the state treasury; and second, when a plaintiff alleges a statute is unconstitutional, state officers enforcing the statute do not act under the state's authority shielded by sovereign immunity. 110 S.W.2d at 482–83. Similarly, in *Colonial Pipeline*, the court held that sovereign immunity does not apply in a *declaratory* judgment action against state officers that challenges the constitutionality of a statute. 263 S.W.3d at 853. Specifying that *Stockton* applied only to suits "preventing the enforcement of an unconstitutional statute," the court made clear this reasoning would not apply to a suit "for money damages . . . because such a suit would 'reach the state, its treasury, funds, or property'" in violation of Tenn. Code. Ann. § 20-13-102. *Id.* at 850. By

5

contrast, here Ingram does not challenge the constitutionality of the TWDA, but attempts to enforce its provisions by arguing that Davis violated the statute. *Colonial Pipeline* and *Stockton* simply do not apply.

As a result, the Court **DISMISSES** Ingram's TWDA claim against the Department and Davis in her official capacity.

    2. Absolute Immunity

Defendants next argue the Court should dismiss the TWDA claim against Davis in her individual capacity because she enjoys a statutory grant of absolute immunity. (Doc. No. 7 at 7.)

Under Tennessee law, "[s]tate officers and employees are absolutely immune from liability for acts or omissions within the scope of the officer's or employee's office or employment, except for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain." Tenn. Code Ann. § 9-8-307(h) (2012). In order for a plaintiff to withstand a defendant's immunity, a plaintiff must plead sufficient facts in his or her complaint of willful, malicious, or criminal acts, or acts for personal gain. *Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1421 (6th Cir. 1996) (citing *Cooksey v. Peach*, No. 01-A-01-9306-CH00247, 1993 WL 328065, at *3 (Tenn. Ct. App. Aug. 20, 1993); *Goodwin v. Bell*, No. 01-A-019111CV00402, 1992 WL 24988, at *2 (Tenn. Ct. App. Feb. 14, 1992); *Smithson v. Tennessee*, No. 01A01-9012CH00453, 1991 WL 95691, at *1 (Tenn. Ct. App. June 7, 1991)).

The Sixth Circuit in *Pursich* noted that "Tennessee courts have not defined 'willful' or 'malicious' as used in section 9-8-307(h)," *id.*, a statement that this Court finds holds true fifteen years later, *see, e.g.*, *Phelps v. Newman*, No. E2012-01065-COA-R3-CV, 2013 WL 28393, at *7 (Tenn. Ct. App. Jan. 3, 2013) (holding—without the court defining "willful" or "malicious"— defendants were not entitled to immunity because plaintiff's complaint included an allegation of

intent and malice by defendants and factual basis for the allegation). Applying a "reasonable construction of those terms," the *Pursich* court held that immunity applied because the plaintiff had not established the defendants had "a deliberate desire to wrong [the plaintiff]." 76 F.3d at 1421.

Here, Defendants argue that Ingram has not alleged sufficient facts that Davis terminated his employment with a deliberate desire to wrong him, apart from averring that her conduct *after* his termination evinced malice. (Doc. No. 7 at 8.)

The Court cannot agree and finds ample allegations of Davis's intent and malice, as well as factual basis for the allegations, in Ingram's pleadings. In his Amended Complaint, Ingram alleges Davis and two of her subordinates "conducted a campaign to force Plaintiff out of his statutory office" that resulted in Davis "remov[ing] Plaintiff from his position for reasons other than non-performance of his duties and responsibilities." (Doc. No. 11 ¶¶ 6, 32.) Ingram alleges this "campaign" included, among other actions, interfering with and undermining his authority, "making decisions that were within the scope of [his] statutory responsibilities and authority," "instructing employees not to follow proper directives from [him]," "excluding [him] from meetings pertaining to his job," "creating a hostile work environment," and "wrongfully and illegally terminating Plaintiff." (*Id.* ¶ 6, 23.)

Ingram further asserts that, at his termination, "Davis evidenced her spitefulness, animus, malice, and prejudice toward [him] by telling him that he would not have the option of resigning instead of being fired" and "by instructing a subordinate to try to come up with some reason for depriving Plaintiff of [his] pension and other benefits." (*Id.* ¶ 24.) His termination, he alleges, was "a result of racially motivated animus by Defendant Davis and those acting in concert with her." (*Id.* ¶ 25.)

7

Not only does he allege that Davis deliberately acted against him, but he avers her actions were part of Davis's broader "campaign to drive out qualified Caucasian employees . . . [and] replace them with persons of minority descent," many of whom were less qualified. (*Id.* ¶¶ 18–22.)

Whether or not the facts as they emerge will corroborate Ingram's allegations, the Court finds Ingram has pleaded sufficient allegations of willful or malicious conduct by Davis to withstand Defendants' absolute immunity defense at the motion to dismiss stage. The Motion is **DENIED** on this point.

3. Qualified Immunity

Defendants also argue that Davis enjoys qualified immunity, such that the Court should dismiss Ingram's TWDA claim against Davis in her individual capacity. (Doc. No. 7 at 8–9.)

The doctrine of qualified immunity provides that "governmental officials performing discretionary functions will be shielded from liability for civil damages as long as their conduct does not violate the clearly established constitutional or statutory rights of which a reasonable person would have known." *Cantrell v. DeKalb Cnty.*, 78 S.W.3d 902, 906 (Tenn. Ct. App. 2001) (citations omitted). A statutory right is "clearly established," if "its contours [are] so clear that a reasonable official would understand that what he or she is doing violates that right. In other words, the unlawfulness of the act must be apparent in light of the pre-existing law." *Id.* (citations omitted).

In assessing qualified immunity at the motion to dismiss stage, a "court must accept the allegations in the complaint as true and decide whether the plaintiff has alleged a . . . violation that would infringe upon a clearly established right, as a matter of law." *King v. Betts*, 354 S.W.3d 691, 708 (Tenn. 2011) (citations omitted). If a plaintiff fails to allege facts showing

either a violation or a clearly established right, then the court should grant the motion to dismiss. *Id.*

Here, the Court finds that Ingram has alleged sufficient facts to meet his burden. Ingram has alleged that Davis violated Tenn. Code Ann. § 4-3-1408(b)(3)—which, since 1999, has granted administrators the right to a four-year appointment unless fired for non-performance—by terminating Ingram's employment on the basis of animus and not for non-performance. (Doc. No. 11 ¶¶ 9, 25–33.) Defendants do not dispute that Tenn. Code Ann. § 4-3-1408(b)(3)'s protections applied to Ingram and his position. In addition, Ingram avers that "[he] is widely known as a capable employment security executive" who "met all the statutory requirements" for his position and who successfully "overcame many internal obstacles" to run the division during a time of increased demand for unemployment benefits. (*Id.* ¶¶ 14–17.) He states that he "performed his duties as Administrator efficiently and competently" and "properly managed the funds made available to him." (*Id.* ¶ 25.) Despite this adequate performance, he maintains that Davis terminated him purely "as a result of racially motivated animus." (*Id.*)

On the other hand, Defendants' argument for dismissal here amounts to the statement that "Plaintiff has failed to aver this [decision] was objectively unreasonable" because the allegations that he performed "efficiently and competently" are "conclusory and subjective." (Doc. No. 7 at 10.) Defendants appear to overstep the bounds of their Motion by asking the Court to weigh the veracity or credibility of Ingram's allegations. At this stage in the process, the Court must construe the Amended Complaint liberally and take its allegations as true. Whether his statements actually are "subjective" is irrelevant, so long as he has sufficiently pleaded a violation—which he has.

Thus, the Court **DENIES** the Motion, as relates to Davis's qualified immunity under the TWDA.

4. Private Right of Action

Defendants next argue that Ingram's TWDA claim should be dismissed because no private right of action exists under the law. Specifically, they argue that Ingram has not shown an intent by the state legislature to allow individuals to enforce the statute, which, they claim, grants such authority to the Commissioner of Human Resources only. (Doc. No. 7 at 11–12.)

As a threshold matter, the Court notes that neither party has presented a case in which a court has found or rejected a private right of action under Tenn. Code Ann. § 4-3-1408, and this Court has not discovered any such case law.

While "[t]he authority to create a private right of action pursuant to statute is the province of the legislature," "[d]etermining whether a statute creates a private right of action is a matter of statutory construction" for the courts. *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 855 (Tenn. 2010) (citations omitted). A private right of action may be expressly created or implied by a statute. *Id.* Where a statute does not expressly create an individual right, the court "look[s] to the statutory structure and legislative history" to determine "whether the legislature otherwise indicated an intention to imply such a right in the statute." *Id.* In doing so, the court considers three relevant factors:

> (1) whether the party bringing the cause of action is an intended beneficiary within the protection of the statute, (2) whether there is any indication of legislative intent, express or implied, to create or deny the private right of action, and (3) whether implying such a remedy is consistent with the underlying purposes of the legislation.

*Id.* at 855–56 (citations omitted). Ultimately, the plaintiff bears the burden of establishing that a private right of action exists under the statute. *Id.* at 856.

Here, based on the *Brown* factors, plaintiff has met this burden. Under the first factor, Ingram has shown he is an intended beneficiary of the statute's protections. The statute provides that the commissioner of labor shall appoint administrators in the Department of Labor and Workforce Development for four-year terms, subject to removal "only for non-performance of duties and responsibilities." Tenn. Code Ann. § 4-3-1408(b)(3). Because Ingram served as an administrator in the Department, he directly benefited from the law's added job security. Defendants do not dispute this point.

As to the second factor, neither party cites any concrete history—such as hearing testimony or discussion by law-makers—that would indicate the legislature intended to create or to deny a private right of action.

Defendants in their Reply argue that, under *Brown*, "a plaintiff must point to some 'legislative history that would make it "manifestly clear" that the legislature intended to engraft a private right of action'"—and that, because Ingram has not done so, his claim automatically fails. (Doc. No. 16 at 6.) This appears to be a mischaracterization of *Brown*. First, Defendants quote *Brown* out of context. The sentence quoted states that the plaintiffs in *Brown* had not shown evidence of any supportive legislative history, but does not state that plaintiffs were *required* to. 328 S.W.3d at 858. (The *Brown* court noted this absence of legislative history in support of a private right of action stood in contrast to extensive evidence in the bill's legislative history that (1) it had been passed to provide an enforcement mechanism for prosecutors, not individuals; (2) the legislature had subsequently considered and rejected at least eight amendments to create an express private right of action under the statute; and (3) hearing testimony from a proposed legislative amendment included statements that the original bill did not create a private right of action. *Id.* at 858–59.) Second, case law that *Brown* cites elsewhere holds that, even if a

plaintiff does not show evidence of the legislature's intent to create such a right, the court may determine an implied right exists if the other two factors warrant it. *Brown,* 328 S.W.3d at 860 n.12 (citing *Owens v. Univ. Club of Memphis*, No. 02A01-9705-CV-00103, 1998 WL 719516, at *11 (Tenn. Ct. App. Oct. 15, 1998) ("While the statute contains no express indication of legislative intent to create or deny a private right of action, a private action is consistent with the purpose of the legislation, and indeed complements the remedy in the statute by providing a mechanism to make employees whole.")).

At the same time, Ingram argues that the content of the law itself evinces an implied intent to create a private right of action. Ingram asserts that the legislature "clearly intended to grant job security to the three Administrators [in the Department of Labor and Workforce Development] far in excess of what is afforded" other employees, as the statute "insulated the three Administrators . . . from political and other pressures by giving them unprecedented job security." (Doc. No. 12 at 10–11, 13.) Ingram argues that because "[t]his legislative intent can only be given effect if Administrators have a private right of action if removed in violation of [the law]," the legislature must have intended to create such a private right of action. (*Id.* at 11, 13.) Defendants, in their Reply, dismiss this as Ingram's "subjective opinion" only. (Doc. No. 16 at 6.) The Court finds Ingram's argument persuasive, though it does not conclusively establish intent and more appropriately serves to bolster his argument under the third *Brown* factor.

As to this final factor, Ingram has shown that a private cause of action is consistent with and would help accomplish the goals of Tenn. Code Ann. § 4-3-1408(b)(3), by providing Ingram and administrators with a means of enforcing its protections. (Doc. No. 12 at 12–13.) Though the statute provides heightened job protections for administrators, he argues, they do not have

12

civil service protections and due process rights of regular state employees to enforce the protections through standardized grievance procedures. (*Id.*) Without a private right of action, administrators entitled to the statute's protections would have no standardized means of enforcing them.

For their part, Defendants appear to argue in their Motion that a private right of action would be inconsistent with the TWDA provisions at issue because the law establishes the state "Commissioner of Human Resources is the appropriate entity to enforce provisions of this statute; not Plaintiff." (Doc. No. 7 at 11.) They base their argument on the statute's subsequent sub-section, Tenn. Code Ann. § 4-3-1408(c), which, at the time of Ingram's discharge, stated in part:

> The transfer of the functions and activities of the various departments and/or programs to the department of labor and workforce development shall not, *because of the transfer*, result in any career service state employee suffering loss of employment, compensation, benefits or civil service status. *Such rights, benefits and compensation* shall continue without any impairment, interruption or diminution; provided, that the department may engage in disciplinary actions or reductions in force as provided for in law. *The commissioner of human resources is authorized to enforce this section and shall determine that the rights, benefits and compensation are not impaired, interrupted or diminished.*[1]

Tenn. Code Ann. § 4-3-1408(c) (2012) (amended 2012) (emphasis added). *See Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 899 (Tenn. 1999) ("if a statute creates a new right and prescribes a remedy for its enforcement, then the prescribed remedy is exclusive.").

However, the Court finds this provision does not apply to Ingram or his situation. Falling within a section of code related to the Department's consolidation in 1999, the sub-section deals exclusively with the impact the consolidation would have on "career service state employees"

---

[1] The legislature has revised this provision, effective October 1, 2012. While the revised statute (and Defendants' filings) refer to "preferred service" employees, the provision applicable at the time of the termination in June 2012 refers to "career service" employees.

13

and guarantees that they would not lose their "rights, benefits, [or] compensation" as a result of the transfer of programs and services to the Department. Tenn. Code Ann. § 4-3-1408(c). The sentence relied on by Defendants grants the commissioner authority only "to enforce this section" and determine that these "rights, benefits and compensation are not impaired, interrupted or diminished." *Id.* Not only does this authorization immediately follow the description of the rights protected in the wake of the consolidation, its language ("rights, benefits and compensation") hews closely to that description. *Id.* Thus, the Court finds that provision grants the commissioner authority limited to the sub-section itself, and not authority to enforce § 4-3-1408 in its entirety. Because Ingram was classified as an "executive service employee" and not a "career service employee," Tenn. Code Ann. §§ 8-30-101(a)(3), (15), (23) (2012), and because his termination was unrelated to the Department's consolidation, the commissioner's role in enforcing sub-section Tenn. Code Ann. § 4-3-1408(c) does not apply and does not make a private right of action here inconsistent with the statute.

Weighing the three *Brown* factors, the Court finds that Ingram has established an implied right of action exists under Tenn. Code Ann. § 4-3-1408(b)(3), and thus **DENIES** the Motion, as it relates to the private right of action argument.

    5. <u>Administrative Exhaustion</u>

Finally, Defendants argue Ingram's TWDA claim should be dismissed because he has failed to allege sufficient facts that he has exhausted administrative procedures required by Tenn. Code Ann. § 4-3-1408(c)—the provision discussed above—and the Tennessee Uniform Administrative Procedures Act ("APA") in Title 4, Chapter 5 of the Tennessee Code. (Doc. Nos. 7 at 13–14; 16 at 6–9.) Specifically, Defendants argue that Tenn. Code Ann. § 4-3-1408(c) and the APA required Ingram to appeal his grievance to the Department's "appointing authority" and

14

that he has failed to allege any facts that he completed such an appeal. (Doc. Nos. 7 at 13–14; 16 at 6–9.)

The APA was "designed to clarify and bring uniformity to the procedure of state administrative agencies and judicial review of their determination." Tenn. Code Ann. § 4-5-103 (2012). Under its provisions, "[a] person who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter, which shall be the only available method of judicial review." Tenn. Code Ann. § 4-5-322(a)(1) (2013) (emphasis added). The APA defines a "contested case" as a "proceeding . . . in which the legal rights, duties or privileges of a party are required by any statute or constitutional provision to be determined by an agency after an opportunity for a hearing." Tenn. Code Ann. § 4-5-102(3) (2013). This includes "the contested case hearing to which a regular employee is statutorily entitled as the final step in the grievance procedures under § 8-30-328," the statutory provision outlining the process by which civil service employees may file employment grievances. *Morris v. Corr. Enters. of Tenn.*, No. 01-A-01-9612-CH00543, 1997 WL 671988, at *4 (Tenn. Ct. App. Oct. 29, 1997) (citations omitted).

These employee procedures differentiate between "regular" or "civil service" employees and "executive service" employees. While civil service employees are entitled to a full commission hearing as the final step in their grievance process ("Step 5"), the final step in a grievance by an executive service employee culminates earlier with a review by the agency's "appointing authority" ("Step 4"). Tenn. Code Ann. § 8-30-328(7) (2012) (repealed 2012); Tenn. Comp. R. & Regs. 1120-11-.04, .05 (2011) (amended 2012) (state regulations detailing the steps of the grievance procedure). The parties agree that Ingram served as an executive service employee.

Here, the Court finds no support in the language of Tenn. Code Ann. § 4-3-1408(c) or § 8-30-828 for Defendants' argument that Ingram was required to exhaust administrative procedures under the APA. At the time of Ingram's discharge, Tenn. Code Ann. § 4-3-1408(c) provided, in its entirety:

> The transfer of the functions and activities of the various departments and/or programs to the department of labor and workforce development shall not, because of the transfer, result in any career service state employee suffering loss of employment, compensation, benefits or civil service status. Such rights, benefits and compensation shall continue without any *impairment*, interruption or diminution; provided, that the department may engage in disciplinary actions or reductions in force as provided for in law. The commissioner of human resources is authorized to enforce this section and shall determine that the rights, benefits and compensation are not impaired, interrupted or diminished. *Also, any employee aggrieved by any impairment in violation of this section shall have the right to seek redress through the grievance procedure established in § 8-30-328*.

Tenn. Code Ann. § 4-3-1408(c) (amended 2012) (emphasis added). As discussed above, this sub-section deals with and is framed in terms of protecting state employees from the loss of "rights, benefits, and compensation" resulting from the transfer of state programs into the consolidated Department in 1999. Just as the explicit authorization to the commissioner here is limited to ensuring these rights "are not impaired" by the transfer, so too is the scope of the grievance authorization in the last sentence. Its wording—"impairment" and "this section"—mirrors the language describing both the specific rights protected by the sub-section and the commissioner's limited authority. In addition, its placement—nestled within one sub-section of Tenn. Code Ann. § 4-3-1408, and not as a stand-alone section—is telling.

Finding no administrative exhaustion requirement for a claim under Tenn. Code Ann. § 4-3-1408(b)(3), the Court **DENIES** Defendants' Motion, as it relates to exhaustion of Ingram's TWDA claim.

    *B. Tennessee Human Rights Act Claim*

Defendants argue the court should dismiss Ingram's Tennessee Human Rights Act ("THRA") claim against the Department because Ingram has alleged insufficient facts to state a claim. (Doc. No. 7 at 14–17.)

The THRA prohibits discrimination on the basis of "race, creed, color, religion, sex, or national origin in connection with employment." Tenn. Code Ann. § 4-21-101(a)(3) (2013). Tennessee courts have long "looked to federal case law applying the provisions of the federal anti-discrimination statutes as the baseline for interpreting and applying the [THRA]." *Graves v. Circuit City Stores, Inc.*, No. 03A01-9501-CH-00012, 1995 WL 371659, at *2 (Tenn. Ct. App. June 21, 1995).

Under the federal Title VII framework, a plaintiff alleging employment discrimination must generally make a four-part showing in order to set forth a prima facie case of discrimination: "1) he is a member of a protected class; 2) was qualified for the job; 3) he suffered an adverse employment decision; and 4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001).

The Sixth Circuit has modified this framework in "reverse discrimination" cases, where a plaintiff is a member of the demographic majority claiming employment discrimination. *Treadwell v. Am. Airlines, Inc.*, 447 F. App'x 676, 678 (6th Cir. 2011); *Thompson v. City of Lansing*, 410 F. App'x 922, 932 (6th Cir. 2011). In such a case, "the first prong of the prima face case is adapted to require the plaintiff to prove 'background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008) (citation omitted). Also, under the fourth prong, a "Plaintiff must show that he was treated differently than similarly situated

17

employees of a different race." *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 837 (6th Cir. 2012). Defendants here argue only that Ingram has failed to establish the first prong of his prima facie case.

A plaintiff may satisfy the first prong if he alleges that the person responsible for the employment decision was a minority. *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 257 (6th Cir. 2002) (holding plaintiff established the first prong based on the single factor that an African-American decision-maker promoted African-American employees). *See Morris v. Family Dollar Stores of Ohio, Inc.*, 320 F. App'x 330, 339–40 (6th Cir. 2009) ("This court has held that a plaintiff can demonstrate background circumstances by showing simply that the employer was a member of the same minority race as the employees he was promoting.")

Here, the Court finds Ingram has alleged sufficient factual allegations to satisfy the first prong of prima facie claim at the motion to dismiss stage. Ingram has alleged that he is Caucasian and that Davis and her two collaborators are African-American. (Doc. No. 11 ¶¶ 18, 21.) These three African-American decision-makers, he alleges, engaged in a campaign to terminate or force out long-term employees, "virtually every one" of whom was Caucasian, and replaced them with African-American employees. (Doc. No. 11 ¶ 20.) Under *Zambetti*, the Court finds this sufficient. *Compare Turner v. Grande Pointe Healthcare Cmty.*, 631 F. Supp. 2d 896, 911 (N.D. Ohio 2007) (finding "that the fact that the majority of the workforce and management at [the employer], as well as all of the decision makers in the instant claim, are female does 'support the suspicion that the defendant is that unusual employer who discriminates against [men]'"), *with Hout v. City of Mansfield*, 550 F. Supp. 2d 701, 723 (N.D. Ohio 2008) (finding the fact that "composition of the workforce . . . was overwhelmingly white and male, as

18

well as the fact that the decision-makers were also white and male, do not constitute sufficient 'background circumstances' to satisfy the necessary first element of the prima facie case").

In so finding, the Court specifically rejects Defendants' argument that Ingram has failed to make a prima facie case because he has not alleged any specific "racial slurs, comments, remarks, harassment, or any other suggestions of racial discrimination, animus, [or] bias" by Davis. (Doc. No. 7 at 14.) Defendants appear to argue that Ingram must allege direct evidence of discrimination—an indefensible argument in light of the decades of case law allowing for circumstantial evidence of discrimination to establish a prima facie case under the burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

In addition, the Court finds Ingram has pleaded enough facts to establish the remaining elements of a prima facie discrimination claim: he was qualified for his role as administrator; he suffered an adverse employment decision in the form of a termination; and he was treated differently than African-American employees, whom, he alleges, were given positions in the Department for which they did not qualify. As a result, the Court **DENIES** the Motion, as relates to the sufficiency of Ingram's THRA claim.

*C. § 1983 Claim*

Defendants raise three arguments for why the Court should dismiss Ingram's claims under 42 U.S.C. § 1983 against Davis in her individual capacity: (1) Davis is entitled to absolute or qualified immunity; (2) § 1983 does not confer substantive rights; and (3) Ingram has pleaded insufficient facts to sustain an equal protection claim under § 1983. (Doc. No. 7 at 17–20.)

As to the first and third arguments, Defendants admittedly reiterate the same legal standards and make the same arguments regarding Davis's immunity and the sufficiency of the

Amended Complaint as they make against Ingram's state law claims. (*Id.*) For the reasons stated above, the Court finds these arguments unpersuasive, as relates to Ingram's federal claim.

As to Defendants' second argument, they assert that "[Ingram's] claim fails because Section 1983 confers no substantive rights," and yet they acknowledge that Ingram has alleged a violation of the Fourteenth Amendment's equal protection clause, which *does* confer substantive rights and receives the same analysis as a Title VII disparate treatment or THRA claim. (*Id.* at 17–19.) Seeing no substantive issue or argument raised here, the Court **DENIES** the Motion as to Ingram's § 1983 claim.

**IV.** **CONCLUSION**

For the reasons stated above, the Court **DENIES** the Motion.

It is so ORDERED.

Entered this the 10, day of May, 2013.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT